# JAMES CASH

*v.*

# EMANUEL EARNSHAW *et al.*

1. PARTNERSHIP—*grounds for dissolving.* It is not for every act of misconduct on the part of one partner that a court of equity, at the instance of the other, will dissolve the partnership and close up the affairs of the company. To justify such an extraordinary interposition, a strong and clear case must be made out, of positive and meditated abuse. For minor misconduct or grievances, involving no permanent mischief, a court of equity will ordinarily go no further than to act upon the faulty partner by way of an injunction. The fact of loss occurring to the firm through mere error of judgment of the partner, is not sufficient cause for a dissolution of the partnership.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. E. & A. VAN BUREN, for the plaintiff in error.

Mr. A. B. JENKS, and Mr. JESSE O. NORTON, for the defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was to dissolve a co-partnership entered into by the parties to this suit on the 26th day of November, 1869, for the purpose of carrying on the business of quarrying stone, and was to continue through the full period of five years.

The ground set out in the bill upon which the plaintiff seeks relief, is the misconduct of the partner, Emanuel Earnshaw. No cause of complaint is alleged against any other member of the firm. He is charged with specific acts of wrongful conduct and general mismanagement of the business of the firm. On account of the charges in the bill, plaintiff in error sought to have the court dissolve the co-partnership, appoint a receiver and close up the affairs of the firm. The court below denied the relief, and plaintiff brings the cause to this court on error.

It is not for every act of misconduct on the part of one partner that a court of equity, at the instance of another, will dissolve the partnership and close up the affairs of the company. The court will require a strong case to be made, and it is laid down, as a general principle, that a court has no jurisdiction to make a separation between partners for trifling causes or temporary grievances involving no permanent mischiefs. 3 Kent, 60.

Story, in his work on Partnership, states the rule to be that, to justify such an extraordinary interposition, the court always expects a strong and clear case to be made out, of positive and meditated abuse. For minor misconduct or grievances, he says, if they require any redress, the court, ordinarily, will go no further than to act upon the faulty party by way of an injunction. Story on Partnership, sec. 288, and authorities cited.

We have carefully examined the evidence in the record, and we fail to discover that clear and satisfactory proof of the

allegations in the bill that the law undoubtedly requires. Indeed, so far as we can see, there is no act on the part of Emanuel Earnshaw that the plaintiff in error can have any just cause of complaint, unless it was the failure to give him a check for $500 on the 12th day of November, 1870, when requested. And if there was no explanation to this fact, we do not think that it is of sufficient gravity to justify the use of the extraordinary power by the court of equity to put an end to the entire contract between the parties. The contract of co-partnership was deliberately entered into after mature consideration, and not without considerable knowledge of each other's characters and fitness, and it ought not to be dissolved on account of any mere trifling cause.

It is apparent, from what took place at the time, that Earnshaw did not intend any wrong to plaintiff in error by the refusal to give the check. The evidence warrants us in saying that there was an honest dispute as to the amount then due to him. Plaintiff in error, for some reason satisfactory to himself, did not choose to have the accounts passed upon at that time, and hence the check was not given. It turned out, however, upon subsequent investigation, that there was more than the amount he demanded due him, and he ought, in fact, to have had the check, but Earnshaw may have been honestly in doubt as to the amount; if so, he ought not to be charged with wilful misconduct, and his contract, for that reason alone, dissolved, and his business broken up. The consequences of the dissolution of the co-partnership are of too serious a character to be justified by so slight a cause. Under the most unfavorable view, it would only work a temporary inconvenience, and it is not pretended that any permanent injury resulted from the refusal to give him a check for the desired amount on that day. His own conduct in the premises is not altogether blameless, and he ought not to be allowed to make the mistaken judgment of his partner the ground for the dissolution of their contract.

By the agreement of the parties, Emanuel Earnshaw was made general superintendent of the affairs of the company, and it is insisted that he made large sales on credit to the injury of plaintiff in error as a member of the firm. It was not provided by the articles of co-partnership that no sales should be made on a credit; it was, however, stipulated that no sales should be made on a credit by one member "against the express wish or consent of two others." The evidence tends to show that the sales that were made on credit, of which complaint is made, were not recklessly done, but were deemed reasonable sales at the time. Certainly, they were not so improvidently made as to be regarded as wilful misconduct on the part of the superintendent. Losses did occur, but they were through mere error of judgment. The credits given were for short periods, and other parties, considered prudent men, engaged in the same line of business, made similar sales with like disastrous results. In making the sales on credit, he violated no express agreement of the parties, and inasmuch as it appears that it was in accordance with the custom of the trade, we see no grounds for just complaint against the action of the superintendent in this regard. He seems to have acted with reasonable prudence, and certainly no wilful conduct can be imputed to him that ought to be visited with any serious consequences.

The most serious cause of complaint seems to be in regard to making the Shannon contract in the first place, and the subsequent agreement with Steele and McMahan to perform and complete his contract with them. It is alleged that, by reason of the improvident contract with Shannon, and the subsequent agreement to complete the work on Lake street, large losses were incurred through the mismanagement of Emanuel Earnshaw.

No doubt, the contract with Shannon was an unfortunate one, but it was certainly deemed a good one by all the parties when made, and if he had been able to perform it, it would have been in the end greatly to their interest.

When Shannon failed, Earnshaw deemed it most advantageous for the interest of all concerned that the company should assume the contract and complete the work. It was thought it would be a great saving to the company. It is true, that the superintendent made the contract with Steele and McMahan without having first consulted with any of the partners, but they certainly all consented to the arrangement after it was made. Plaintiff in error says that he protested against the company assuming the contract, but he, himself, superintended the work for part of the time, and did other acts that can not but be regarded as a ratification of the act of the superintendent in undertaking to complete the work. It does not appear but that, under all the circumstances, it was the very best thing the company could do, and perhaps prevented heavier losses than would otherwise have been sustained.

It is hardly necessary to comment separately on the other charges of misconduct. We do not find in all the record any cause of sufficient gravity, proven by clear and satisfactory evidence, that would justify a court of equity to interpose to put an end to the partnership relations between the parties. It may be that there were slight errors in judgment on the part of the superintendent, but no evidence of wilful misconduct appears that would result in serious injury to plaintiff in error or any member of the firm.

No reason appears that would prevent a profitable and harmonious co-operation between the several partners in the prosecution of the common business of the firm, and hence no cause for dissolution, and the decree of the Superior Court is affirmed.

*Decree affirmed.*