Barker, J.
—The defendant and his father, the late "[Trial Driggs, were copartners in the special and limited business of endorsing commercial paper made by third parties for a consideration paid to them therefor. There is no pretense that they, as copartners, ever did any other business; the maker of the note was "[Trial Driggs, one of the members of the firm, and he delivered the same to "Warren Driggs, and, as the evidence tends to show, in payment of an individual indebtedness which the maker owed to him. The evidence also tends to show that before the maturity of the note Warren Driggs transferred the same to his son, the plaintiff herein, who purchased the same in good faith and paid a valuable consideration therefor.
There is no evidence in the case that Warren Driggs became a party to the note in any form. As matter of fact, and it so appears in the case, the endorsement was an unauthorized act, the note being given for the individual indebtedness of "[Trial Driggs, and, therefore, did not bind the defendant unless the same was transferred to a bona fide purchaser before, maturity, and the court so instructed the jury on the trial. The plaintiff gave some evidence which he contends tended to prove that the defendant admitted in the life-time of Urial Driggs that the use of the firm name in making the endorsement was with his consent, and that he ratified and approved of the act. But the court, at the defendant’s request, instructed the jury in substance that the evidence relied upon did not bear upon that question and could not be used for that purpose. These instructions deprive the plaintiff on this appeal from making the point that the defendant, as a matter of fact, *258 authorized the endorsement, or that he afterwards ratified the act, and the verdict cannot be upheld on that ground.
The note was not protested. The plaintiff seeks to meet the result which would otherwise follow the omission to protest the same, by proving that Urial Driggs, one of the indorsers, before the maturity of the no be waived the necessity of the protest and notice thereof. The evidence tended to show that Urial did waive the protest as to himself. The evidence on this question is very brief, and is to the effect that after Warren Driggs transferred the note to the plaintiff, and about the time the same fell due, he having the note in his possession, applied to Urial Driggs and asked him what he should do with the note, and if he should put it in the bank, and he replied: “ I waive protest on it.” The defendant insists that Urial Driggs, as his copartner, had no power to make a waiver, so far as he is concerned. It cannot be doubted that a member of a copartnership who has indorsed a note may, in behalf of the firm, waive the protest and all the members be bound thereby, unless, at the time the waiver was made the copartnership had been dissolved and the holder had notice of the same. The defendants also contend that the waiver was of no avail, because it was made to a stranger, who was not a party to the note, and who had no interest in charging the indorsers.
At that time, the note had been transferred to the plaintiff, and if Warren Driggs was not authorized by the holder of the note to act for him, then the arrangement made with Urial that the note need not be protested was ineffectual, as it amounted to nothing more than the statement of the indorsers to a stranger that he was willing to waive protest. But, we think, as the person with whom the arrangement was made had the actual custody of the note, and was the former owner of the same, and had sold and transferred it tó the plaintiff, that these circumstances were sufficient to justify the conclusion that he did in fact represent the plaintiff on that occasion, and was authorized to negotiate for a waiver of the demand and protest of the note at its maturity. The plaintiff, therefore, made out a prima facie case entitling him to recover against the defendant as an indorser.
On the trial the defendant offered to make proof which, if the same had been received, would tend to establish that before the indorsement was made the firm of R. W. Driggs & Go. had been dissolved.
The evidence was rejected, and the defendant excepted. There is no claim made that prior to the indorsement of the note, that either Warren Driggs or the plaintiff ever had any other dealings with the copartnership, so as to entitle them to a notice of the dissolution of the firm, and if, *259 as a matter of fact and of law, the firm was dissolved at the time of the indorsement, the defendant is not liable to. the plaintiff as endorser, although he was a bona fide purchaser of the note before its maturity. Clapp v. Rogers, 12 N. Y., 282.
No time was named for the continuance of the co-partnership as appears from the evidence, nor any provision made for the settlement of its concerns at dissolution. It was, therefore, dissolveable -at the will of either party. Story on Partnerships, § 269; McElvey v. Lewis, 76 N. Y., 373.
The evidence on the question of dissolution was substantially this: The defendant testified as a witness in his own behalf, that before the date of the note he forbid his father-using his name. He was then asked this question: “Did' the partnership exist as a fact when the note was given ? A. It did not with my consent; I had forbidden his using my name.” And the latter part of the answer was stricken out by the request of the plaintiff’s counsel. He was then"' asked this question: “ Had you done anything with your father for the purpose of terminating the partnership ? ” And he answered, “Yes.” Q. How long before April 3,1884? A. The winter before, at two different times. Q. What had you done ? A. I had forbidden him using my name.” This evidence was objected to by the plaintiff’s counsel and the same was stricken out, and the defendant’s counsel excepted. The defendant’s counsel offered to prove by another witness that some time before the date of the note, that the defendant forbid his co-partner to make use of his name or the name of R. W. Driggs & Co. any longer for any purpose whatever. The court sustained the objection and the defendant excepted.
This evidence offered was entirely competent and should have been received, as it tended to prove the fact contended for by the defendant, that before the indorsement was made the partnership was dissolved by the refusal of the defendant to continue the same any longer. The partnership was formed for the special and limited purpose of endorsing commercial paper for third parties upon a consideration to be paid therefor. All that was necessary for either party to do to bring the co-partnership business to an end, as between, themselves, was to give notice to the other that he would not remain a member of the firm any longer, and he might signify his intention by declining to do business in the co-partnership name.
Considering the case in every view, in which it can be presented by the evidence now before us, the plaintiff’s recovery was in excess of his legal claim upon the defendant as indorser. The verdict was for the full face of the note *260 and interest. The consideration paid for the note was in part an obligation of an existing indebtedness, which the plaintiff held against Warren Driggs, for board and lodging, in the sum of about seventy-five dollars, and the balance of the consideration was paid for board thereafter furnished, amounting to the sum of twenty-five dollars. The evidence as to the transaction relative to the transfer, was given by Warren Driggs, who testified that he sold the note to the plaintiff in July, 1884, and further stated as follows: “I had an unsettled account with him, and w'hen I came to settle with him I found that I owed him some, and I turned the note out to him for that and for my board; I was boarding with him;- the amount I owed him then did not equal the amount of the note; I think he had to pay me from twenty-five to thirty dollars; I think it was somewhere in that neighborhood; he paid me that in boaid; I boarded with him.”
As the indorsement of the note was not within the limits of the co-partnership ousiness, and putting the same in circulation by the other partner was a fraud upon the defendant, the plaintiff’s right as holder of the note was governed and Emited by the rule; if the purchaser has paid hut part of the consideration or value of the property, he is only entitled to be considered a bona fide puichaser pro tanto. Stalker v. M’Donald, 6 Hill., 96; Phœnix Ins. Co. v. Church, 81 N. Y., 218; Turner v. Treadway, 53 id., 659; Coddington v. Savage, 29 Johns. R., 637.
This point was not made upon the trial, so far as to bring the question before us, by any of the exceptions which were taken to the rulings of the court below, and we do not, therefore, place our reversal of the judgment on that ground, but have referred to the subject for the purpose of bringing the attention of the court below to the question, upon the trial of the action.
Judgment reversed, new trial granted, with costs to abide the event.
All concur.